IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN E. D.,

                    Plaintiff,

       v.                                Civil Action No.
                                          6:20-CV-1143 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY

                    Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP          MELISSA A. DELGUERCIO, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      LOUIS J. GEORGE, ESQ.
625 JFK Building               NICOLE BOUDREAU, ESQ.
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which he has

applied.[1]  The matter has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from

the application of proper legal principles and is supported by substantial

evidence.

I.     BACKGROUND

Plaintiff was born in March of 1971, and is currently fifty-one years of

age.  He was thirty-eight years old at his alleged onset date of disability –

January 31, 2010 – and forty-six years old the time of his application for

benefits in April of 2017.  Plaintiff stands five feet and seven inches in

height, and weighed approximately two hundred and fifteen pounds at the

relevant times.  Plaintiff lives in an apartment with his girlfriend in Utica,

New York.

---

[1]     Plaintiff' was last insured on December 31, 2012.  A prior DIB application
resulted in an unfavorable decision in July 2015.  Invoking *res judicata* based on that
determination, the assigned administrative law judge ("ALJ") focused her determination
principally upon plaintiff's request for SSI payments.  Plaintiff has not challenged that
finding.

Plaintiff reports having graduated from high school and taking regular classes while he was in school.  He has worked in the past as a delivery driver, a manufacturer, and a stocker.  Plaintiff also formerly played in professional darts tournaments and continues to operate a YouTube channel making videos about darts.

Plaintiff alleges that he suffers from mental impairments, including bipolar disorder and posttraumatic stress disorder ("PTSD").  As is relevant to his applications, plaintiff has primarily treated for his mental impairments with various sources at Upstate Cerebral Palsy Center and MVHS Family Medicine Center.  Plaintiff also claims to have suffered a remote fracture of his left leg in February 2015 resulting from a bicycle accident.

Plaintiff claims that he is unable to work because of anxiety and depression.  As a result of those conditions, he has difficulty sleeping, feels like his brain is in a fog, and gets overwhelmed thinking about things that could go wrong.  Plaintiff mostly stays home and does not have much of a social life.  Plaintiff has a driver's license but does not currently own a motor vehicle.  He is able to shop and goes multiple times per week, but, without a car, he can only buy what he can carry at one time.  Plaintiff reports having difficulty finding the motivation to take care of his appearance, but he is "OCD" about housework.  He also has difficulty

focusing and concentrating even on simple tasks, and he has not noticed any positive effect from the medications his physicians have given him.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act on April 18, 2017.  In support of his application, he claimed to be disabled due to bipolar disorder, PTSD, and a left leg injury.

A hearing was conducted on March 5, 2019, by Administrative Law Judge ("ALJ") Elizabeth W. Koennecke, to address plaintiff's application. Following that hearing, ALJ Koennecke issued an unfavorable decision on August 7, 2019.  That opinion became a final determination of the agency on July 16, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

    B.   The ALJ's Decision

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from a severe mental impairment, variously characterized, that imposes more than

4

minimal limitations on his ability to perform basic work functions.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and found that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering Listings 12.04, 12.06, and 12.15.

ALJ Koennecke next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following exceptions:

> [the claimant] retains the ability to understand and follow simple and semi-skilled instructions and directions; perform simple and semi-skilled tasks independently; and maintain attention/concentration for simple and semi-skilled tasks. The claimant can regularly attend to a routine and maintain a schedule. He can relate to and interact appropriately with others to the extent necessary to carry out simple and semi-skilled tasks. Finally, he can handle work-related stress, in that he can make occasional decisions directly related to the performance of simple and semi-skilled tasks.

ALJ Koennecke went on to step four to conclude that plaintiff had no past relevant work. Proceeding to step five, the ALJ found, after consulting a vocational expert, that plaintiff is able to perform the demands of other

available work in the national economy, citing as representative

occupations the positions of janitor, hand packager, and order picker.

Based upon these findings, ALJ Koennecke concluded that plaintiff was not

disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 18, 2020.[2]  In support

of his challenge to the ALJ's determination, plaintiff argues that the ALJ

erred by failing to properly assess the three separate opinions from treating

licensed mental health counselor ("LMHC") Kaitlyn LaPolla.  Dkt. No. 18.  In

particular, plaintiff asserts that the ALJ erred in finding those opinions less

persuasive based on (1) the fact her opinions were rendered on check-box

forms because checking a box is no different from a source writing the

same information, and because she had a longstanding treatment

relationship with plaintiff to substantiate her opinions, and (2) the fact that

she had lesser credentials than the other sources who rendered opinions

because the amended regulations eliminated any such hierarchy of

sources.  *Id.*  Plaintiff also argues that the ALJ failed to articulate how she

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

assessed the factor of supportability as is required by the regulations.  *Id.*

Oral argument was conducted in this matter, by telephone, on April 15, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting

7

as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.   Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it

9

meets or equals an impairment listed in Appendix 1 of the regulations. *Id.*
§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so,
then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F.
Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d
582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an
assessment of whether the claimant's RFC precludes the performance of
his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).
If it is determined that it does, then as a final matter, at step five the agency
must examine whether the claimant can do any other work. *Id.* §§
404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work
lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);
*Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it
becomes incumbent on the agency to prove that the claimant is capable of
performing other available work. *Perez*, 77 F.3d at 46. In deciding whether
that burden has been met, the ALJ should consider the claimant's RFC,
age, education, past work experience, and transferability of skills. *Ferraris*,
728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

10

Plaintiff's challenge centers upon his contention that the ALJ erred by failing to properly weigh the various opinions from treating LMHC Kaitlyn LaPolla. He asserts that (1) the ALJ erred in discounting her opinion based on the fact it was rendered on a check-box form, particularly without considering her longstanding treatment relationship with the plaintiff; (2) the ALJ failed to evaluate the supportability of her opinions; and (3) the ALJ erred in finding her opinion less persuasive than that of one-time examining physician Dr. Sara Long based on the fact that Dr. Long has higher educational credentials because the amended regulations eliminated any such "source hierarchy." Dkt. No. 18.

Because plaintiff's application was filed in April of 2017, this case is subject to the amended regulations regarding the evaluation of opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source

11

rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[3] and consistency[4] of those opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).

LMHC LaPolla provided opinion statements on three separate occasions on forms entitled "Medical Examination for Employability

---

[3]    On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[4]    On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination."  On February 7, 2017, she opined that plaintiff's various mental impairments were expected to last from four to six months, and that they caused him to be very limited in his abilities to maintain attention and concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior without exhibiting behavioral extremes, and moderately limited in his abilities to understand and remember instructions, carry out instructions, maintain basic standards of personal hygiene and grooming, and function in a work setting  at a consistent pace.  Administrative Transcript ("AT") at 616-17.[5]

Nearly a year later, on January 18, 2018, LMHC LaPolla opined that plaintiff's mental impairments were expected last twelve or more months, and that they caused him to be very limited in his abilities to carry out instructions and maintain basic standards of personal hygiene and grooming, and moderately limited in his abilities to understand and remember instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, maintain socially appropriate behavior without exhibiting behavioral extremes, and function in a work

---

[5]     The Administrative Transcript is found at Dkt. No. 15, and will be referred to herein as "AT __."

setting at a consistent pace. AT 664-65. LMHC LaPolla also opined that plaintiff had significant difficulty with social interaction and reliability, noting that he had made little-to-no progress despite engagement in therapy sessions. AT 665.

In her third employability assessment, dated August 1, 2018, LMHC LaPolla opined that plaintiff's mental impairments were expected to last from one to three months and that he was moderately limited in his abilities to understand and remember instructions, carry out instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior without exhibiting behavioral extremes. AT 720-21.[6]

In her decision, the ALJ concluded that all of these opinions were "less persuasive," finding that they were (1) inconsistent with the opinions of the consultative examiner and the state agency non-examining psychological consultant, (2) contrary to the clinical findings of record during the relevant period, (3) in check-box form, and (4) based on less

---

[6]    I note as an initial matter that moderate limitations have generally been found to not be inconsistent with the performance of unskilled work. *See Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013) (noting that the ALJ was correct in finding that opinions detailing moderate limitations in concentration or social functioning were consistent with a capacity to perform unskilled work); *Call v. Comm'r of Soc. Sec.*, 16-CV-1003, 2017 WL 2126809, at *5 (N.D.N.Y. May 16, 2017) (Carter, M.J.) (noting that "a moderate limitation would not necessarily preclude the ability to perform unskilled work").

professional expertise compared to the opinions from the consultative examiner and state agency source.  AT 16-17.

I note, as an initial matter, that the fact that an opinion is rendered on a check-box form, standing alone, is no longer recognized as a valid reason for finding a source's opinion less persuasive in the abstract.  *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) (emphasizing that "the nature of the ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue – not its form – and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert").  However, the extent to which a source sets forth a medical opinion without providing any explanation or rationale on the opinion form is still one valid consideration when assessing the statutory factor of supportability.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (noting that opinions will be found more or less persuasive based on whether the source provides relevant objective medical evidence and *supporting explanations* in support of the opinion).  In this case, the opinion forms provided by LMHC LaPolla generally do not contain any explanation for the limitations checked other than a listing of plaintiff's diagnoses and, in the January 2018 form, a notation that plaintiff had made little-to-no progress despite engagement in therapy sessions.  AT 665.  To the extent

that the ALJ cited to the check-box nature of the form to indicate that LMHC LaPolla had not provided any significant explanation on the form itself for the limitations she opined, that is a valid consideration.

Regarding the factor of supportability, although it is true that the ALJ did not make an explicit statement of her findings regarding this factor, she did broadly find that the opinions of LMHC LaPolla were "contrary to the clinical findings of record during the period in question," records which also include the treatment from LMHC LaPolla herself. An ALJ need not specifically incant the term "supportability" to show that this factor was considered. *See McDonagh v. Acting Comm'r of Soc. Sec.*, 16-CV-8698, 2017 WL 9286987, at *16 (S.D.N.Y. Nov. 27, 2017) (applying the principle that what is important is that the ALJ applies the proper legal analysis, not "whether the ALJ's decision included certain incantations" or terminology). Rather, her statement that the opinions were inconsistent with the clinical findings of record, although admittedly generic, provides an indication that she found the opinions to be unsupported by LMHC LaPolla's own treatment notes. This is true despite the fact that the ALJ did not generally analyze or even cite LMHC LaPolla's treatment records, given that the ALJ is not required to specifically discuss evidence to show that it was considered, and, as will be discussed below, her treatment records do not

16

suggest a finding that is inconsistent with the ALJ's indication that the treatment evidence as a whole, including those records, are contrary to her opinions.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (highlighting that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Although such broad and somewhat vague explanation might not suffice in all cases, a review of the record here does not reveal evidence which supports LMHC LaPolla's opinion other than the fact of her treating relationship with plaintiff.  Although the treatment relationship is certainly a factor the ALJ should consider in the appropriate circumstances, the existence of a treating relationship no longer entitles a source's opinion to more credence under the amended regulations.

LMHC LaPolla noted in a treatment plan from October of 2016 that plaintiff had weaknesses consisting of poor support, poor verbalization, and use of immature defenses, and that he was "very much" impaired both at home and socially by his impairments.  AT 669-70.  In her treatment plan from a year later, LMHC LaPolla noted that plaintiff had made minimal progress toward his goal of managing his mental health in order to obtain employment and maintain independence.  AT 672.  However, in the same document she noted that, although plaintiff was guarded, he reported

17

feeling much better and he decided that he preferred not to take medication for his mental impairments. AT 673-74.

In April of 2018, LMHC LaPolla noted that plaintiff reported feeling sluggish with a low mood, but observed that he was alert and oriented, neatly groomed, had a clear and logical thought process, had normal speech and motor activity, and denied any suicidal or homicidal ideation or intent. AT 941. Similar observations were made the following month, and he reported that, although he was still experiencing inconsistent sleep, he was more aware of those issues and attempting to intervene before they became more of a problem. AT 943, 945.

In September of 2018, LMHC LaPolla noted that plaintiff was working with resource groups to find appropriate housing, was trying to be patient and focus on what he wanted for himself, and he had sufficient insight to decline an offer to live with his sister because he was worried staying with her would cause him to fall back into old patterns of letting others take care of him. AT 682. Later that month, plaintiff reported to LMHC LaPolla that he was continuing to work towards finding an apartment and keeping his distance from his ex-girlfriend so as not to worsen the situation between them, and that, although he had "some intense anxiety" that morning, he otherwise felt "positive" about everything. AT 685. Plaintiff did

acknowledge a worsened mood in November of 2018, but reported feeling much more relaxed the following month after his pending legal issues were resolved favorably.  AT 692.

LMHC LaPolla's notes, overall, document that plaintiff reported greater anxiety or mood difficulties during times of situational stressors, such as difficulties with his landlord or girlfriend, or when he was not receiving testosterone supplementation regularly, but that he did better under normal circumstances or when he was able to engage in consistent exercise and treatment with testosterone therapy.  *See e.g.*, AT 676, 679, 688, 698, 941, 943, 945.

Most notably absent from LMHC LaPolla's treatment records is any explanation or supporting evidence for her opinion of greater limitations, particularly those set forth in the February 2017 and January 2018 statements.  The record does not appear to contain treatment notes from LMHC LaPolla, other than the treatment plan summaries that were discussed above, for the period prior to April of 2018.[7]  There is also very little documented throughout her records from early 2018 other than reports of sluggishness and some issues with sleep, and her treatment records as

---

[7]     The administrative transcript does contain records from the medical source who treated plaintiff at the same facility for that time period.  That source's records will be discussed below related to the factor of consistency.

a whole show that, despite experiencing some symptoms, plaintiff was generally motivated to help himself and was able to make decisions for himself and his health. Nor is there any evidence to support any difficulty with concentration or ability to follow instructions. LMHC LaPolla's treatment notes therefore do not support her opinions.

In sum, although the ALJ's discussion of supportability is at the lower limits of what is required by the regulations, she has not failed to assess that factor, or failed to articulate any assessment of that factor in a way that would hamper meaningful review. In assessing the sufficiency of the ALJ's finding in this case, it is important to keep in mind that the agency's purpose in amending the regulations related to assessing opinion evidence was to place the focus back on what the evidence supported. Indeed, one of the stated reasons behind amending the treating source rule and associated regulations was because "[c]ourts reviewing our claims under our [the prior] rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision," thereby "reweighing evidence instead of applying the substantial evidence standard of review." *See* 82 FR 5844-01, 2017 WL 168819, at \*5853. Although her articulation of the supportability factor could have been clearer, the ALJ did

provide some discernible indication that she considered that factor and there is simply nothing in the record that calls into question her finding that LMHC LaPolla's opinions are not particularly persuasive or which would require the incorporation of greater limitations in the RFC.[8] *See Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) (stating that "where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that the claimant will be deprived of the right to have her disability determination made according to the correct legal principles," but acknowledging that "[w]here application of the correct legal standard could lead to only one conclusion, we need not remand")

Regarding the factor of consistency, the ALJ reasoned that LMHC LaPolla's opinions were inconsistent with both the other relevant opinion evidence and the evidence in the record as a whole. These given reasons constitute substantial evidence to support the ALJ's finding in this respect. State agency consultant Dr. T. Bruni opined that plaintiff did not have a severe mental impairment and that he experienced only mild limitations

---

[8]    I reiterate that this finding is not meant to imply that the bare-bones discussion related to supportability in this case would be sufficient in all cases. Rather, in cases where a source's records do include findings that could be construed as supporting his or her opinion, the ALJ would be required to provide a more fulsome explanation if the opinion was found to be nonetheless unsupported.

from his mental symptoms.  AT 68.  Similarly, consultative examiner Dr. Sara Long opined that plaintiff had no limitations regarding simple or complex tasks or making appropriate decisions, and that he was able to maintain attention and concentration, maintain a regular schedule, regulate his emotions, control behavior, maintain personal hygiene, and be aware of appropriate precautions.  AT 519.  The opinion from treating physician Dr. Saqib Chaudhry is also consistent with the ALJ's finding regarding LMHC LaPolla's opinion.[9]  The ALJ found Dr. Chaudhry's opinion regarding plaintiff's physical abilities to be unpersuasive.  However, Dr. Chaudhry opined additionally that plaintiff had no mental limitations, and, although the ALJ noted the opinion regarding mental abilities, she did not indicate that she also found that part of the opinion unpersuasive.  AT 16, 594.  It is therefore clear that every source to provide an opinion regarding plaintiff's mental functioning other than LMHC LaPolla found that he had no mental limitations.  The fact that none of those sources opined the specific limitations included in the RFC does not render the ALJ's finding speculative or unsupported, particularly as the RFC is more restrictive than any of those opinions.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir.

---

[9]     Although Dr. Chaudhry was plaintiff's general practitioner, he did provide treatment related to plaintiff's mental impairments, including on the date he completed his opinion form.  AT 507.

2013) (finding no error, noting that "[a]lthough the ALJ's conclusion may not

perfectly correspond with any of the opinions of medical sources cited in his

decision, he was entitled to weigh all of the evidence available to make an

RFC finding that was consistent with the record as a whole); *see also*

*Ryan W. v. Comm'r of Soc. Sec.*, 20-CV-1325, 2022 WL 813934, at *4

(N.D.N.Y. Mar. 17, 2022) (Stewart, M.J.) (noting that "[w]here an ALJ

makes an RFC assessment that is more restrictive than the medical

opinions of record, it is generally not a basis for remand," and, even if it is

an error, such error is generally harmless); accord *Cheryl E. v. Comm'r of*

*Soc. Sec.*, 20-CV-0867, 2021 WL 5964890, at *7 (N.D.N.Y. Dec. 15, 2021)

(Lovric, M.J.).

　　　　Additionally, the record as a whole supports the ALJ's conclusion.

Although plaintiff was noted at times as being depressed, anxious, or

guarded, and having a disorganized thought process and/or circumstantial

speech, AT 428, 431-32, 434, 437-38, 711, 715, 717, 935-36, 939, he was

also generally noted to have appropriate hygiene with unimpaired thought

process, and good or fair concentration, memory, attention, insight, and

judgment.  AT 431-32, 443, 447, 451, 728, 732, 764, 777, 935-36, 939.

Nurse practitioner ("NP") Sylvia Redmond noted in May 2017 that plaintiff

reported a panic attack that caused him to go to the emergency room, but

that attack occurred in the context of him drinking alcohol and choosing not to sleep because he felt so good.  AT 437.  His insomnia was noted to improve when he worked on keeping a good sleep schedule with good sleep hygiene and taking medication or melatonin.  AT 441.  In June 2017, NP Redmond noted that plaintiff reported experiencing considerable stress related to his landlord, but he was not receptive to any medication adjustments and the medications that he was willing to take were not fully effective.  AT 710.  By August 2017, plaintiff had ceased taking his prescribed mental health medications of his own volition.  AT 714.  However, he reported to his general care provider that he was taking melatonin for sleep with good results.  AT 722.

In September 2017, plaintiff's testosterone levels were tested in response to his reports that he had loss of energy and unprovoked sadness despite improvement in his life, and his levels were found to be low.  AT 730.  After a few months on testosterone replacement therapy, he reported feeling great with a better mood and more energy.  AT 738.  In December 2018, plaintiff reported his mood was improved while being consistent with his testosterone replacement treatment.  AT 779.  In January of 2019, he reported that he was happier with a good mood and pleased to be busy doing YouTube videos and darts.  AT 697.  He was observed to be

pleasant, articulate, cooperative, and motivated to deal with his depression by keeping active and engaging with life in healthy ways.  AT 698.  At the end of January of 2019, plaintiff reported worsening mood, but acknowledged that this was because he had not been going to the gym or exercising and had run out of his prescribed testosterone; he reported that he was planning to go pick up his medications and was trying to stay positive.  AT 972.  Plaintiff experienced some improvement subsequently, but reported experiencing depressed mood in March of 2019 after he again ran out of testosterone, was "kicked out of the gym," and began drinking.  AT 923, 976.  Plaintiff also stated that he had not been working on coping skills, he just wanted his medication.  AT 923.   He was also noted to be generally making inappropriate comments at the appointment and became upset when the physician who had been prescribing his testosterone criticized him for his behavior.  AT 923-24.

The record as a whole shows that plaintiff's moods during the relevant time period appear to have been heavily related to his testosterone levels, as multiple sources documented that his mood improved significantly when he was engaged in testosterone replacement therapy and worsened at times when he was not taking that therapy consistently. *See e.g.*, AT 738, 752, 763, 779, 972, 974, 976, 979, 981.  Indeed, plaintiff

reported that testosterone levels out his mood and that "testosterone and thyroid medication [have] been most helpful for my mood, depression."  AT 974.  The record therefore shows that, when plaintiff was being treated, his reported brain fog, low energy, and depressed mood were improved, which contradicts LMHC LaPolla's opinion for moderate or greater limitations related particularly to concentration, attention, ability to follow instructions, ability to make decisions, and interaction with others.

Overall, the ALJ's assessment that LMHC LaPolla's opinion is not consistent with the evidence in the record as a whole is supported by substantial evidence.  Similarly, when considered as a whole, that evidence also constitutes substantial evidence to support her RFC finding.  Although the evidence shows that plaintiff did have some lingering mood variability and issues with sleep, the record documents significant improvement in those symptoms when plaintiff is compliant with his testosterone replacement treatment and therapy, and when he engages in exercise and practices good sleep habits.  There is simply no evidence that would undermine the ALJ's conclusions related to either LMHC LaPolla's opinions or the RFC, much less to the extent necessary to overcome the deferential standard of review applicable here.  For these reasons, I recommend that plaintiff's arguments be rejected and the ALJ's findings be affirmed.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 21) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 18) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    April 21, 2022
          Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge